IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT COHEN, | No. C-05-03680 EDL |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| TIMBERS COMPANY, INC., | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Robert Cohen is a resident of Alamo, California. He sued Defendant Timbers Company, Inc., a high-end fractional property developer, for negligence and negligent representation to recover for injuries sustained when he inspected a residence offered for sale at Esperanza Resort in Cabo San Lucas, Mexico. Timbers is a Colorado corporation with its offices in Colorado. Arguing that the Court lacks jurisdiction to hear this case, Timbers specially appeared and moved to dismiss the case on that basis. After carefully considering the arguments of the parties and the evidence, the Court DENIES Defendant's motion.

## II. FACTUAL BACKGROUND

The following facts are undisputed for purposes of this motion. On an Alaska Airlines flight to Cabo San Lucas in April 2004, Cohen saw an advertisement for Esperanza Resort and Timbers Company. The advertisement appeared either in the Alaska Airlines in-flight magazine, the West Coast edition of the Wall Street Journal, or the Robb Report, a national luxury lifestyle magazine. Upon arriving in Cabo San Lucas, Cohen spoke with Jim Buchanan, whom Cohen asserts was a sales agent for Timbers. Cohen left Cabo without purchasing an interest in Esperanza. Buchanan

called Cohen "several times" after Cohen returned to California. Kirk Brinks, whom Cohen asserts was another sales agent for Timbers, also called Cohen in California. In September 2004, Cohen decided to purchase a three-bedroom unit, and the transaction closed in January 2005. After the purchase, Brinks again solicited Cohen at home in California, suggesting that he purchase an interest in a new four-bedroom unit at Esperanza. When Cohen declined because he did not think that the views would be good, Brinks reassured him that they would be, and invited Cohen to see for himself. Cohen already planned to stay at Esperanza the week of May 15, 2005. Brinks explained that the second floor would be erected by then, and that Cohen would be able to verify that the views were satisfactory. Brinks called Cohen again before his May 15th departure and urged him to make a refundable deposit for a unit.

When Cohen visited in May 2005, he met Brinks at the development two days in a row. The first day, Brinks showed him floor plans and decorations. The next day, Brinks took him to the construction site and led him to the unfinished second floor. When Cohen asked whether it was safe to walk on the floor, which Cohen had noticed was made of Styrofoam, Brinks told him that it was. Reassured by Brinks, Cohen then started walking, fell through the Styrofoam floor and crashed one story below, sustaining injuries to his heel, vertebrae and coccyx. While Timbers does not dispute these facts, it disputes that Brinks was its employee or agent.

### III. EVIDENTIARY OBJECTIONS

Both parties asserted a number of objections. Plaintiff's Evidentiary Objections are not really objections to evidence, but rather constitute argument. The Court accordingly overrules them. The Court also overrules all of Defendant Timbers' Objections with the exception of its objections to Exhibits I and J to the Declaration of David F. Berry, which the Court sustains. Exhibit I is inadmissible hearsay. Similarly, Exhibit J, the unsigned declaration of a witness, is hearsay and lacks an indicia of reliability.

### IV. DISCUSSION

A. Personal Jurisdiction Standard

Personal jurisdiction is determined by the applicable state personal jurisdiction statute and constitutional principles of due process. Data Disc, Inc. v. Systems Tech. Assocs., Inc., 557 F.2d

1280, 1286 (9th Cir. 1977). California allows courts to exercise personal jurisdiction to the full extent permitted in the Constitution. See Cal. Code Civ. Proc. § 410.10. Due process requires that a nonresident defendant have sufficient minimum contacts with California to comport with traditional notions of fair play and substantial justice. See, e.g., International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). If the nonresident's activities are "substantial . . . continuous or systematic," a court may exercise general jurisdiction with respect to any cause of action asserted against a nonresident. Farris v. Capt. J.B. Fronapfel Co., 182 Cal. App. 3d 982, 987 (1986) (citations omitted); see also Amoco Egypt Oil Co. v. Leonis Nav. Co., 1 F.3d 848, 851 n3 (9th Cir. 1993). Plaintiff recognizes that Defendant's contacts do not support general jurisdiction.

Alternatively, courts may exercise specific jurisdiction when the cause of action arises out of the nonresident's activities within or affecting the forum state, based on a three-part test:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) The claim must be one which arises out of or results from the defendant's forum-related activities; (3) Exercise of jurisdiction must be reasonable.

Data Disc, 557 F.2d at 1287. Plaintiff argues that he has satisfied the test for special jurisdiction.

The plaintiff bears the burden of establishing that jurisdiction is proper. See Data Disc, 557 F.2d at 1285; see also W. Schwarzer, et al., Federal Civil Procedure Before Trial § 9:113 (2005). Where, as here, a court relies exclusively on affidavits for evidence, a Plaintiff need only establish a prima facie showing of jurisdiction. See Data Disc, 557 F.2d at 1285. In determining whether the plaintiff has presented a prima facie case, the Court must assume the truth of well-pled allegations in the complaint that are not contradicted and resolve conflicts between affidavits in plaintiff's favor. Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002). Once the defendant has contradicted allegations contained in the complaint, plaintiff may not rest on the pleadings, but must present admissible evidence which, if believed, would support the court's exercise of personal jurisdiction. Data Disc, 557 F.2d at 1284 (citation omitted).

//
//

3

B. Cohen made a prima facie case for special jurisdiction

Timbers submitted the declaration of its president establishing that it is a Colorado corporation, with business offices in Colorado, that it is not registered to do business in California and has no business offices in California, that it has not developed any property in California, and that it has not entered into any contracts in California with any California residents. Declaration of David A. Burden in support of Defendant Timbers Company, Inc.'s Motion to Dismiss ("Burden Decl.") ¶¶ 2-6. Timbers' showing negates general jurisdiction, as Cohen concedes. Cohen therefore must establish a prima facie case that Timbers performed some act by which it purposefully availed itself of the privilege of conducting business activities in California; that his claim arose out of Timbers' forum-related activities; and that the exercise of jurisdiction is reasonable. See Data Disc, 557 F.2d at 1287.

1. Timbers' relationships with Brinks, Buchanan, and Esperanza

Preliminarily, Timbers argues that two threshold issues defeat personal jurisdiction. Timbers first argues that Brinks is not its employee and therefore his conduct in soliciting Cohen in California and in encouraging Cohen to walk on the floor is not attributable to Timbers. Timbers relies on a declaration by Brinks that states that Brinks is not currently its employee. See Declaration of Kirk Brinks ("Brinks Decl."). However, the declaration does not address whether Brinks worked as an employee or agent of Timbers at the time of his solicitation of Plaintiff. See Brinks Decl." ¶¶ 2-4; see also Burden Decl. ¶ 7. Further, Plaintiff's declaration states that Brinks held himself out to Plaintiff as an agent of Timbers. See Declaration of Robert Cohen ("Cohen Decl.") ¶ 8 (Brinks always made clear that he was reporting to Timbers). This evidence is uncontradicted. Plaintiff also submitted evidence that, at least as of November 2005, Brinks was listed on Timbers' website as a member of Timbers' sales team at Esperanza. Id. ¶ 8, Ex. B. The Court must resolve conflicting evidence in Cohen's favor. Thus, Cohen has made a prima facie case that there existed some type of agency relationship between Timbers and Brinks at the time that Cohen dealt with him. Whether or not he was an employee of Timbers, as opposed to some other type of agent acting on Timbers' behalf, Timbers may still be liable. See Restatement of the Law (Second) Agency §§ 14, 14N, 27, 219 (1958) (principal may also be liable for the acts of

4

independent contractors, agents and individuals having apparent authority to act on behalf of that principal).

Second, Timbers argues that Esperanza engaged in any solicitation or advertising, not Timbers. Timbers points out that the advertisement that Cohen saw on his April 2004 flight to Cabo was an advertisement for Esperanza. See Reply at 2-3; see also Cohen Decl., Ex. A (showing 2005 advertisement from Alaska Airlines in flight magazines, which Cohen believes is similar to the one he saw in April 2004). The advertisement provides a toll free number and a web-site address for Esperanza resorts, but also touts Timbers as the developer ("A signature development by the Timbers Company"). Timbers presented evidence that it has never owned a property or equity interest in Esperanza. See Further Burden Decl. ¶ 3. Cohen, however, offered evidence that Timbers is a marketer and advertiser for Esperanza (see, e.g., Declaration of David F. Berry ("Berry Decl."), Ex. F (Timbers responding to online information request, noting that it is assisting with marketing and sales of the Residences at Esperanza, referring to Esperanza as "we," and signing with email address at Timbers company)). Cohen further declares that he was contacted in California by Brinks as a representative of Timbers, not Esperanza. Cohen Decl. ¶¶ 4-5, 8. Brinks does not address this evidence in his declaration, so it is uncontradicted. See Brinks Decl. Cohen also states that Buchanan was a sales agent for Timbers and that Buchanan contacted him at home in California several times. Cohen Decl. ¶ 3. Timbers does not dispute that Buchanan was its agent, or that he contacted Cohen in California. See Further Burden Decl. Cohen therefore met his burden of showing that Timbers actively availed itself of California as part of its efforts to market and sell units at Esperanza Resort.

    2.    Purposeful availment

"Purposeful availment," the first prong of the test for special jurisdiction, "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." Yahoo! Inc. v. La Ligue Contre le Racisme et l'Antisemitisme, 2006 U.S. App. LEXIS 668, *18 (9th Cir. Jan. 12, 2006). In a tort case such as this one, the Court applies "an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." Id.

5

1 at *19 (citing Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 803 (9th Cir. 2004)). A
2 defendant's absence of physical presence in a forum does not defeat personal jurisdiction if the
3 defendant is a commercial actor who purposefully directed contacts towards a resident of the state.
4 See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985).

Cohen identifies a number of distinct acts by which Timbers availed itself of a California forum. Timbers advertised in an in-flight magazine for Alaska Airlines, knowing that Alaska operates many flights from California cities, or in the West Coast edition of the Wall Street Journal, or in the Robb Report, each of which Timbers knew would reach California residents. After Timbers knew that Cohen was a California resident, Timbers (through both Buchanan and Brinks) contacted Cohen in California several times, and eventually sold Cohen a three-bedroom unit at Esperanza. Timbers (through Brinks) later solicited Cohen's purchase of a four-bedroom unit by making two separate phone calls to California. Timbers (again through Brinks) enticed Cohen to purchase the Esperanza units by assuring him that he could trade his time in Cabo with time at Calistoga Ranch, a resort in Napa Valley, only one hour from Cohen's home. Finally, Timbers offered a website that allowed potential purchasers, including Californians, to request information about the Esperanza Resort. See Cohen Decl. ¶¶ 3-5, 8-9, 13.

Timbers argues that these contacts do not amount to purposeful availment. However, "a non-resident defendant's act of soliciting business in the forum state will generally be considered purposeful availment if that solicitation results in contract negotiations or the transaction of business." Shute v. Carnival Cruise Lines, 897 F.2d 377, 381 (9th Cir. 1990) (citing Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir. 1988)), rev'd on other grounds, 499 U.S. 585 (1991); see also Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1393 (9th Cir. 1984) (jurisdiction proper because defendant knew that it was negotiating with a California corporation, intended that its magazines be distributed nationwide, including California, and would know that breach of the distribution contract would injure plaintiff in California; noting that "[d]ue process does not require substantial contacts or the selection of the best forum; it requires only minimum contacts and fair play"). For example, in Shute, the Ninth Circuit held that a cruise line purposefully availed itself of the benefits of Washington state by advertising in the local media, promoting its cruises through

6

1  brochures sent to travel agents in Washington, paying a commission on sales of cruises in
2  Washington, and conducting promotional seminars in Washington designed to increase sales to
3  residents of that state. 897 F.2d at 382. Although the court did not have to decide the issue, the
4  court specifically noted that "it is possible that Carnival's knowledge that ticket sales were being
5  made to Washington residents is, in itself, sufficient to establish that Carnival purposefully availed
6  itself of the benefits and protections of Washington law." Id. at 383 n.3.[1]

7  While the contacts with Washington in Shute somewhat exceed those of Timbers with
8  California here, courts have found purposeful availment based on less. For example, in Rio
9  Properties, the court held that "even a passive website in conjunction with 'something
10 more'–conduct directly targeting the forum–is sufficient to confer personal jurisdiction." 284 F.3d at
11 1020 (citing Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998)). In a trademark
12 infringement case, a district court held that national advertising, toll-free telephone numbers, two
13 documented sales in California, and a declaration by another California resident claiming that she
14 had been confused by the advertisement, were sufficient to withstand a motion to dismiss. Indiana
15 Plumbing Supply, Inc. v. Standard of Lynn, Inc., 880 F. Supp. 743, 745-47 (C.D. Cal. 1995); see
16 also Rubbercraft Corp. of Cal. v. Rubbercraft, Inc., 1997 U.S. Dist. LEXIS 24145, at *7 (C.D. Cal.
17 Dec. 17, 1997) (finding purposeful availment based on combination of factors, including
18 advertisement in a nationally circulated periodical, maintaining an 800 number, operating a web-
19 page that advertised defendant's product and gathered customer information, and making sales into
20 California); West Corp. v. Superior Court, 116 Cal. App. 4th 1167, 1176 (2004) (marketer who
21 "upsells" by offering additional products or services to customer who initially contacts marketer,
22 knowing that customer is California resident, avails itself of California for business even though
23 customer placed initial call); cf. Cybersell, Inc. v. Cybersell, Inc., 130 F.3d. 414, 419-20 (9th Cir.
24 1997) (no jurisdiction where defendant's only contact with forum was passive web-site that did not
25 allow customers to place orders).

---

[1] Although Timbers argues that it is not closely connected with Esperanza or Brinks and that it did not place those advertisements (in contrast to Shute where the tortfeasor itself engaged in advertising), at this stage of the litigation, the Court must accept as true Cohen's uncontradicted evidence that Brinks contacted Cohen as a salesman working for Timbers.

7

1    Timbers' contacts with California are sufficient to establish a prima facie case of purposeful
2  availment at this early stage of the litigation. Most importantly, Timbers' contacts actually resulted
3  in business being transacted. The 2004 advertisement in Alaska Airlines in-flight magazine reached
4  California residents generally, and Cohen specifically.[2] While Timbers argues that Esperanza placed
5  the advertisement Cohen saw in 2004, which entity placed the advertisement by itself is not
6  dispositive. The advertisement touted Timbers as the developer of Esperanza Resort, Cohen
7  declared that he had contacted Timbers as a result of the advertisement, and Timbers has not refuted
8  that it generated business through that advertisement. Nor is that advertisement the sole contact.
9  Rather, it is undisputed that Buchanan and Brinks each called Cohen several times at his home in
10 California to encourage him to purchase an interest in Esperanza. During one of those phone calls,
11 Brinks invited Cohen to come visit the new larger unit, and during another, Brinks urged Cohen to
12 send in a refundable deposit to guarantee a unit should he decide that he liked the view. Cohen also
13 established that Timbers' website can be accessed by California residents. Although the website is
14 mostly "passive" in that it does not allow visitors to purchase any products or services on-line, it is
15 interactive insofar as it allows customers to provide contact information. Indeed, Timbers used
16 information collected on its website to send an informational packet to a California resident
17 (Plaintiff's counsel posing as an interested customer). And while Timbers sets forth evidence that it
18 did not develop and does not own any interest in Calistoga Ranch (Further Burden Decl. ¶¶ 4-5),
19 Timbers does not refute that Brinks promoted this Napa Valley property as a selling point to
20 encourage Cohen to purchase an interest in Esperanza (Cohen Decl. ¶ 13). At this stage, Cohen has
21 set forth sufficient contacts to satisfy his burden of showing purposeful availment by Timbers.

22    3.    The controversy arose out of Timbers' contacts with California

23    Timbers also argues that the harm to Plaintiff did not arise from Timbers' California
24 contacts. In <u>Shute</u>, the Ninth Circuit adopted a more liberal "but for" test of causation, rather than

---

[2] Cohen also attempts to show that Timbers solicited other Californians by relying on the fact that in the Spring 2005 edition of the "Esperanza Sun," two out of the three owner testimonials are from California residents, and of the seventeen new members listed in the welcome brochure, five of the seventeen new members listed are from California. <u>See</u> Opp'n 3. Cohen, however, does not provide a copy of the Esperanza Sun or a copy of the welcome letter. Thus, for purposes of this motion, the only evidence that Cohen has offered that shows that any sales to California residents took place, is that *he* purchased two units at Esperanza.

8

1  the "proximate cause" analysis urged by Timbers that some other circuits employ. 897 F.2d at 385-
2  86. Shute held that the plaintiff's injuries from falling while aboard a cruise ship arose out of the
3  defendant's advertising activities in her home state because, but for those activities, the plaintiff
4  would not have boarded the ship and been hurt. See also Hope v. Otis Elevator Co., 389 F. Supp. 2d
5  1235, 1240 (E.D. Cal. 2005) (reasonable to infer that defendant's advertising in California and
6  association with California travel agents was "but for" cause of plaintiff's injuries in hotel in
7  Hawaii). Timbers' advertising in the Alaska Airlines magazine, Buchanan's subsequent contacts,
8  the eventual sale of the three-bedroom unit, and Brinks' later phone calls and invitation to buy a
9  second unit satisfy the "but for" test because Cohen would not have visited the four-bedroom unit
10 and fallen through its floor without those contacts.

11       4.       Exercising jurisdiction would be reasonable in this case

12 Because Cohen meets the first two prongs of the test for special jurisdiction, Timbers can
13 defeat jurisdiction only by showing a compelling case that the exercise of jurisdiction would be
14 unreasonable. Burger King, 471 U.S. at 477. Whether a case is compelling is analyzed by balancing
15 seven factors: (1) the extent of the defendant's purposeful interjection into California's affairs; (2)
16 the burden on the defendant of defending in California; (3) the extent of the conflict with the
17 sovereignty of the defendant's state (here, Colorado); (4) California's interest in adjudicating the
18 dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of California
19 to plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.
20 See Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1487-88 (9th Cir. 1993).

21 Balancing these factors, the Court concludes that Timbers has not made a compelling
22 showing that exercise of jurisdiction here would be unreasonable. Five of these factors either weigh
23 in Cohen's favor or are neutral. Although Timbers has no offices or personnel in California, it is
24 only a few hours' travel away, and Timbers' litigation burden must be seen in light of the
25 corresponding impact on Plaintiff. See Hope, 389 F. Supp. 2d at 1240-41 (concluding that "in this
26 'era of fax machines and discount air travel,'" it was not constitutionally unreasonable to require a
27 Hawaiian defendant to litigate in California) (citing Panavision, 141 F.3d at 1323)). Similarly,
28 because Timbers is not a foreign defendant, any conflict with the sovereignty of Colorado is of

minimal significance. See Core-Vent, 11 F.3d at 1489. Indeed, Timbers contends that Mexico as well as Colorado constitute appropriate fora. See Reply at 8:8-9. Yet the burden on Timbers to defend in a foreign country would appear to be far more substantial than defending in California (as well as far more burdensome on Cohen). See Core-Vent, 11 F.3d at 1488 ("The Supreme Court has recognized that defending a lawsuit in a foreign country can impose a substantial burden on a nonresident alien"). California has a strong interest in adjudicating a dispute where one of its residents was seriously injured, and where the cause of the injury was solicitation of that resident at home in California. Burger King, 471 U.S. at 473. Key witnesses for the Plaintiff reside in Northern California, including himself, his wife, and two of the percipient witnesses(one attended the meeting Cohen had with Brinks the day before he visited the apartment, the other accompanied Cohen to the airport after his fall), his treating doctors, and witnesses who can testify about his lost earnings and his loss of enjoyment in life. See Cohen Decl. ¶¶ 10-12. Although Timbers points out that other witnesses likely reside in Mexico, it has not provided any evidence to establish their number or significance. It therefore appears that California would provide for more efficient judicial resolution than Mexico. Hope, 389 F. Supp. 2d at 1241. Finally, California would afford the most convenient and effective forum for Cohen, although this factor does not weigh heavily. See Core-Vent, 11 F.3d at 1490 ("a mere preference on the part of the plaintiff for its home forum does not affect the balancing").

Only the first and last of the balancing factors weigh somewhat in Timbers' favor. Although the extent of purposeful interjection is normally coextensive with the analysis for purposeful availment, a determination that a defendant purposefully availed itself of California law does not eliminate the need to consider the degree of the intrusion. See Ziegler v. Indian River County, 64 F.3d 470, 475 (9th Cir. 1995); Core-Vent, 11 F.3d at 1488. Although Timbers' interjection into California was limited, its agents did intentionally call a California resident several times to solicit sales. The last factor regarding the existence of an alternative forum in Colorado also weighs in favor of Timbers. Considering all the factors together, however, the balance tips slightly in favor of Plaintiff or is, at best, neutral, falling short of a compelling case that other considerations render exercise of jurisdiction by this Court unreasonable. Burger King Corp., 471 U.S. at 477.

10

**V. CONCLUSION**

For the reasons set forth above, the Court DENIES Timbers' Motion to Dismiss at this stage. Should discovery reveal additional evidence that undermines personal jurisdiction, Timbers will, of course, have another opportunity to raise the issue.

**IT IS SO ORDERED.**

Dated: January 30, 2006

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge